**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Deon Hampton, <br><br> Plaintiff, <br><br> v. <br><br> DuPage County et al., <br><br> Defendants. | No. 20-cv-5948 <br><br> Honorable Nancy L. Maldonado |

**MEMORANDUM OPINION & ORDER**

Before the Court are two motions to dismiss Plaintiff Deon Hampton's Second Amended Complaint: one filed by Defendants DuPage County, DuPage County Jail, DuPage County Sheriff's Office (collectively, "DuPage County Defendants"), Sheriff James Mendrick, Timothy R. Schoenenberger, Eric Swanson, Melissa Gustafson, Jennifer Allen-Stuckey, Thomas T. Repa, Michael A. Shake, Luke Richard, Jodi M. Ritter, Thomas G. Kaczmarczyk, Brian A. Eidson, Kevin Villegas, Stephen P. Shymkus, Kevin A. Segoviano, Kelly S. Strumillo, and Michael J. Davis (Dkt. 58); and another filed by Defendant Nurse Malgorzata Kuczynska. (Dkt. 59.) For the following reasons, Nurse Kuczynska's motion to dismiss is granted and the DuPage County Defendants' motion is granted in part and denied in part. The Court grants Plaintiff leave to file a Third Amended Complaint by April 22, 2024. By April 22, 2024, Plaintiff must also file a status report providing an update regarding service on Defendants Feeney, Armstrong, and Romanelli.

1

**Background**

In her Second[1] Amended Complaint, Plaintiff Deon Hampton brings claims against 29[2] Defendants for alleged violations of her civil rights stemming from her incarceration at the DuPage County Jail in 2020. (Dkt. 39.)[3] She names three state entities as Defendants: DuPage County, DuPage County Jail, and DuPage County Sheriff's Office (collectively, "DuPage County Defendants"). She also names the following individuals as Defendants: Sheriff James Mendrick, Deputy Sheriff (Chief) Anthony E. Romanelli, Deputy Sheriff (Chief) Timothy R. Schoenenberger, Deputy Sheriff Lieut. Melissa (or Jennifer)[4] Gustafson, Deputy Sheriff Jennifer Allen-Stuckey, Deputy Sheriff Sergeant Thomas T. Repa, Deputy Sheriff Sergeant Michael A. Shake, Deputy Sheriff Luke Richard, Deputy Sheriff Sergeant Brandon J. Ritter, Deputy Sergeant Kelly S. Strumillo, Deputy Sheriff Thomas G. Kaczmarczyk, Deputy Sheriff Brian A. Eidson, Deputy Sheriff Kevin Villegas, Deputy Sheriff Stephen P. Shymkus, Deputy Sheriff Kevin A. Segoviano, Deputy Sheriff Michael J. Davis, Deputy Sergeant Richard A. Feeney (who is now deceased), and Head Nurse Malgorzata G. Kuczynska. (Dkt. 39 ¶¶ 9, 12–28, 35.) Hampton also names five unnamed Defendants as "John Doe" and one as "Jane Doe," alleging that they were employed by the Sheriff's Office at times relevant to her claims. (*Id.* ¶¶ 29–34.)

To support her claims against these Defendants, Hampton alleges the following facts. Hampton is a transgender woman who was in the custody of DuPage County Jail, where she was first processed as an inmate on November 7, 2020. (Dkt. 39 ¶¶ 36, 41.) Hampton alleges that she

---

[1] The operative complaint is improperly labeled as "Plaintiff's First Amended Complaint." (Dkt. 39 at 2.) The Court has dismissed two prior complaints by Hampton in this matter, thus the Court will refer to her instant complaint (Dkt. 39) as her Second Amended Complaint.
[2] Defendant DuPage County Health Department, named in the Second Amended Complaint, has been voluntarily dismissed by Hampton. (*See* Dkts. 67–68.)
[3] In citations to the record, page numbers are taken from the CM/ECF headers.
[4] In the case caption, Hampton names "Jennifer Gustafson-Diaz." (Dkt. 39 at 1.) In the allegations of her Second Amended Complaint, Hampton refers to both Melissa Gustafson and Jennifer Gustafson-Diaz. (*See id.* ¶¶ 14, 101.) Thus, the Court will refer to this Defendant as "Gustafson."

was subjected to race and gender discrimination, retaliation, and the denial of adequate medical treatment by the jail staff in the following ways.

### A. Isolation

Hampton served time in isolation, which she alleges was discriminatory. She was housed with one other inmate, another transgender woman, and she alleges that she had to use the gym and other services and privileges alone. (Dkt. 39 ¶ 45.) In a grievance on November 13, 2019, she complained to jail staff that her isolation caused depression. (*Id*.) Hampton ultimately alleges that the jail and its staff "refused to allow [her] into general population because she was transgender." (*Id*. ¶¶ 69 m, 80 h.)

### B. Verbal and Physical Abuse

Hampton alleges that on November 13, 2019, she filed a grievance stating that prison staff used discriminatory slurs and hate speech towards her, including by calling her a "f----t man boy" and refusing to acknowledge her as a woman. (*Id*. ¶ 45.) She further alleges that Allen-Stuckey[5] referred to her by the slur "f----t" and said, "you f----ts think that yall [sic] can do whatever yall wont [sic] you aint [sic] special." (*Id*. ¶ 51.) She further alleges that Repa grabbed her and slammed her face into a window, stating "you f-----n['] b---h I did not tell you to move you f----n['] f----t," and threatened to make her suffer. (*Id*. ¶ 51.) Hampton filed a grievance about this altercation on February 14, 2020, which was found to be unfounded and closed. (*Id*. ¶ 52.) Inmate Services informed Hampton "that there was 'not sufficient evidence to prove disrespectful language was used by staff' and that it was '[Hampton's] word versus the word of Sgts. Allen-Stuckey and Repa.'" (*Id*. ¶ 52.)

---

[5] In the text of her complaint, Hampton refers to "Sergeant Allen," whereas in her case caption, she names "Jennifer Allen-Stuckey." (*See* Dkt. 39 at 1, ¶ 51.) The Court construes Sergeant Allen to be the same individual as Jennifer Allen-Stuckey and refers to this defendant as Allen-Stuckey in summarizing the complaint.

Hampton also alleges that she submitted a "second formal grievance" on February 11, 2020, alleging that she was subjected to "racist and discriminatory conduct and being specifically targeted by deputy Armstrong." (*Id.* ¶ 49.) She further alleges that she submitted a grievance on March 22, 2020, "regarding verbal [sic] being suffered by one Deputy Davis and fearing for life," and requested to be moved to another area so that she would not have to interact with Davis. (*Id.* ¶ 53.)

On August 24, 2020, Hampton filed a grievance regarding a physical and verbal assault by Strumillo and other jail deputies, who she alleges held her down while one deputy placed his knee on her neck. (*Id.* ¶ 56.) She alleges that one deputy stated, "This is another 'I can't breathe' moment," and laughed. (*Id.* ¶ 57.) Hampton alleges receiving medical attention from a nurse due to injuries sustained by the deputies. (*Id.* ¶ 56.)

Elsewhere in her complaint, Hampton generally alleges "sexual abuse . . . by staff," and that individual officer Defendants "[c]ommitted sexual abuse of plaintiff." (Dkt. 39 ¶¶ 69 k, 80 e.) She provides no specific factual allegations regarding any sexual abuse by jail staff.

Regarding violence from other inmates, Hampton alleges that she submitted a grievance on January 17, 2020, stating that another inmate threw feces at her and that the jail staff did nothing to mitigate the situation. (*Id.* ¶ 47.)

**C. Prison Conditions**

Hampton also alleges that she submitted two grievances on January 22, and February 11, 2020, "regarding a failure of the Jail staff in ensuring the proper maintenance and operation of the heating unit and low temperature" in Hampton's cell, which caused her to get sick. (*Id.* ¶¶ 48, 50.)

4

### D. Medical Treatment

On July 17, 2020, Hampton submitted a grievance due to "a medical staff nurse's negligence in giving her the wrong medication." (*Id*. ¶ 54.) Hampton further alleges that "[w]hen confronted about the suspicion that [she] was given the wrong medication, [she] was disregarded and told [she] must take the medication." (*Id*.) This grievance was considered "founded and brought to the attention of the nurse's supervisor and staff." (*Id*. ¶ 55.)

On August 25, 2021, Hampton also filed a grievance alleging that the jail denied her "the ability to obtain appropriate mental health treatment." (*Id*. ¶ 58.)

### E. Unavailable Items in the Commissary

Also on August 25, 2021, Hampton filed a grievance alleging that the jail failed to allow her "to use feminine hygiene products, such as hair relaxers and specific shaving tools" because these products were not available in the jail commissary. (*Id*. ¶ 59.)

### F. The "Alert" on Hampton

Hampton also alleges that the "Defendants have singled out and treated [her] differently based on [her] exercising her rights and filing multiple lawsuits." (*Id*. ¶ 83.) Specifically, she "was told that there is an 'alert' assigned to her as an inmate" which "advises deputies[] to watch out for her, she has multiple lawsuits against IDOC, write her up any chance you get." (*Id*. ¶ 85.) She alleges that "this alert is the reason for the continued retaliation and poor treatment of [her]." (*Id*. ¶ 91.)

Based on these allegations, Hampton brings the following claims: (1) § 1983 claims for inadequate medical care against DuPage County, the DuPage County Sheriff's Office, and Sheriff Mendrick, in his official capacity, brought as *Monell* claims (Count I); (2) § 1983 claims for race and gender discrimination and harassment against DuPage County, DuPage County Sheriff's

5

Office, and Sheriff Mendrick (Count II); (3) retaliation claims brought through § 1983 and the Illinois Civil Rights Act against DuPage County, DuPage County Sheriff's Office, and Sheriff Mendrick (Count III); (4) § 1983 claims for inadequate medical care against all individually named Defendants, except Sheriff Mendrick, in their individual capacities (Count IV); (5) § 1983 claims for race and gender discrimination and harassment against all individually named Defendants, except Sheriff Mendrick, in their individual capacities (Count V); and (6) retaliation claims brought through § 1983 and the Illinois Civil Rights Act against all individually named Defendants, except Sheriff Mendrick, in their individual capacities (Count VI). Hampton also attached 70 pages of exhibits to her Second Amended Complaint, which largely consist of her grievances and some incident reports filed by some of the individually named Defendants. (*See* Dkt. 39-1.)

Before the Court are two motions to dismiss. The first was filed by all Defendants who have been served, except Nurse Kuczynska, under Fed. R. Civ. P. 12(b)(5) for insufficient service of process and 12(b)(6) for failure to state a claim. The second was filed by Nurse Kuczynska, who has moved to dismiss on the grounds Hampton has failed to plead a claim against her.

## Discussion

**I. Motion to Dismiss for Insufficient Service of Process**

Under Fed. R. Civ. P. 12(b)(5), a defendant may move to dismiss a complaint for insufficient service of process. A plaintiff must serve her complaint on the defendants within 90 days after the complaint is filed. Fed. R. Civ. P. 4(m). When a plaintiff fails to timely serve the defendants, the Court must dismiss the action without prejudice unless the plaintiff shows good cause, in which case the Court must extend the time for service. *Id*. "The plaintiff bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective

service." *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011). Under Rule 4(m), the Court has the discretion to grant an extension to complete service even if the plaintiff cannot show good cause. *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008); *see also Carr v. Mendrick*, No. 21-cv-6301, 2022 WL 13919326, at *3 (N.D. Ill. Oct. 24, 2022) (explaining that Rule 4(m) allows courts to excuse a delay in service "even when a plaintiff lacks any justification for the delay in service").

Here, Defendants argue that this case must be dismissed for insufficient service because Hampton did not serve the Defendants until 17 months after filing this action.[6] Hampton filed this action on October 5, 2020, and did not serve the Defendants until March 30–31, 2022, well beyond 90 days. (Dkts. 1, 46–48.) The Court in its discretion, however, finds that there was good cause for this delay given the procedural history of this case. As Hampton argues, she initially applied for leave to proceed in forma pauperis (IFP) at the same time she filed her initial complaint pro se. (*See* Dkts. 1, 3.) While her petition was pending, it is reasonable that Hampton would not have attempted to complete service expeditiously upon filing her complaint, given that the Court must order the U.S. Marshals to complete service "if the plaintiff is authorized to proceed in forma pauperis under 20 U.S.C. § 1915." Fed. R. Civ. P. 4(c)(3). The Court, however, denied Hampton's IFP application and soon after dismissed her initial complaint, granting leave to amend, which Hampton did. (Dkts. 13, 19.) The Court then dismissed the First Amended Complaint and appointed counsel for Hampton. (Dkt. 23.) After the Court excused the first appointed counsel and recruited Hampton's present counsel, the Court granted Hampton leave to file her Second Amended Complaint, which she filed on December 16, 2021. (Dkts. 31, 34, 35, 38, 39.) One hundred eight days after filing her Second Amended Complaint, Hampton sent out waivers of

---

[6] The Court notes that per the parties' joint status report dated January 18, 2023, Defendants Feeney, Armstrong, Romanelli, and the John and Jane Does still have not been served. (Dkt. 78.)

service. (Dkts. 46–48.) In light of the delays due to the multiple amendments to the complaint and the recruitment of counsel, the Court declines to dismiss Hampton's claims for insufficient service and finds that there was good cause for Hampton's delay in serving the Defendants per Rule 4(m). Regarding Defendants Feeney, Armstrong, and Romanelli, who as of today have not been served, Plaintiff must inform the Court of measures she has taken to serve these parties.

## II. Motions to Dismiss for Failure to State a Claim

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant, may move to dismiss under Rule 12(b)(6) challenging the sufficiency of the complaint, as opposed to the complaint's merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### A. Improperly Named Institutional Defendants

Defendants argue that Hampton improperly named the DuPage County Jail and DuPage County as defendants and that they must be dismissed. Regarding DuPage County Jail, Defendants argue that the jail is not a suable entity. (Dkt. 58 at 13.) Defendant is correct: "unlike municipalities, a jail constitutes a 'non-suable entity' under section 1983." *Smith v. Mendrick*, No.

19-cv-7652, 2021 WL 4318081, at *3 (N.D. Ill. Sept. 23, 2021) (quoting *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012)). Hampton indicates that she does not object to DuPage County Jail's dismissal "if DuPage County Jail is a non-entity." (Dkt. 69 at 9.) The Court thus dismisses all claims against DuPage County Jail because it is a non-suable entity.

Regarding DuPage County, Defendants argue that Hampton has failed to state a claim because the County has no legal control over the Sheriff's Office, and Hampton did not allege that the County itself was involved in any of the alleged violations beyond providing funding to the Sheriff's Office and jail. (Dkt. 58 at 13.) Hampton in response argues that DuPage County is a necessary party because it provides funds to the Sheriff's Office, "including settlement and judgments," although she cites no law to support her argument. (Dkt. 69 at 9.) Hampton is correct that "a county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity." *Carver v. Sheriff of LaSalle Cnty.* (*Carver II*), 324 F.3d 947, 948 (7th Cir. 2003). Hampton appears to name Sheriff Mendrick in both his individual capacity and his official capacity. (Dkt. 39 ¶¶ 9, 65.) The Court thus declines to dismiss DuPage County given that Hampton asserts claims against Sheriff Mendrick in his official capacity.

### B. Hampton's *Monell* Claims

Hampton pleads three *Monell* claims against DuPage County, the DuPage County Sheriff's Office, and Sheriff Mendrick: (1) violation of her Fourteenth Amendment rights because of inadequate medical care, which is explicitly pled as a *Monell* claim; (2) race and gender discrimination and harassment actionable through § 1983; and (3) retaliation in violation of § 1983. (Dkt. 39 at 11–20.) The Court construes the last two claims as *Monell* claims, given that Hampton

invokes § 1983 and asserts them against local government entities.[7] A local governing body cannot be held liable under § 1983 through a respondeat superior theory or "*solely* because it employs a tort feasor." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). A local governing body may, however, be liable pursuant to § 1983 for violating an individual's rights "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694. Under this standard, local governing bodies "are not vicariously liable for the constitutional torts of their employees or agents," but rather are only liable "when they themselves cause the deprivation of rights." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021); *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 376 (7th Cir. 2022).

Defendants argue that Hampton's *Monell* claims must be dismissed because Hampton has failed to allege facts supporting any policy or custom by the DuPage County Defendants that caused her constitutional rights to be violated. Hampton in response fails to defend her *Monell* claims, thereby waiving argument. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("[A] party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citation omitted). Despite Hampton's waiver, Hampton's operative complaint provides a laundry list of 17 alleged "official actions, policies, practices, and customs," with almost no factual allegations to support any action or inaction by a local governing body or a policymaker. (*See* Dkt. 39 ¶ 69; *see also id.* ¶ 80 (listing 11 alleged "official actions, policies, practices and customs.").) Hampton alleges these same "official actions,

---

[7] Hampton also asserts these claims against Sheriff Mendrick and at least in Count I, she specifies that Sheriff Mendrick is being sued in his official capacity. (*See* Dkt. 39 ¶ 65, at 13, 15.) Hampton's claims against Sheriff Mendrick in his official capacity are "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 47 U.S. 159, 165–66 (1985) (quoting *Monell*, 436 U.S. at 690 n. 55).

10

policies, practices and customs" against the individual Defendants sued in their individual capacities. (*Compare* Dkt. 39 ¶¶ 69, 80, *with id.* ¶¶ 122, 155.) At a minimum, Hampton's repetitive complaint is confusing as to which alleged actions support her claims against individual Defendants for their own actions, as opposed to actions or inactions attributable to the DuPage County Defendants. At worst, her repetition could suggest an attempt to plead claims against the DuPage County Defendants based on a respondeat superior theory, which she cannot do under § 1983. The Court therefore dismisses the *Monell* claims without prejudice and grants Hampton leave to replead. In doing so, Hampton shall bear in mind Rule 8(a)(2)'s requirement that she plead a "short and plain statement of the claim," and she must make clear which actions she alleges are attributable to any local governing bodies.[8]

### C. Hampton's Claims Against the Individual Defendants

All individual Defendants who have been served thus far have moved to dismiss, arguing that Hampton has failed to allege sufficient facts to state a facially plausible claim that they violated her rights. To address this argument, the Court will address Hampton's allegations against each individual Defendant. The Court will then consider the claims against Nurse Kuczynska, who filed a separate motion to dismiss. Finally, the Court will address the sufficiency of the claims against all other Defendants whom Hampton does not plead any specific facts against and Hampton's

---

[8] Defendants also argue that Hampton's gender and race discrimination claims based on her placement in segregation or her allegation that she was denied shaving products and hair relaxers, which were unavailable in the commissary, cannot support a claim for gender discrimination actionable through § 1983. The Court need not address this argument because of its ruling that Hampton has failed to allege any policy or custom attributable to a local governing body to support her *Monell* claims. Hampton's allegation that her "time served, isolated in segregation was related to the discriminatory conduct of the Jail staff due to [her] race and preferred gender identity," does not clearly plead any policy or custom attributable to the DuPage County Defendants and instead implicates the jail staff without naming any individually-named defendant in particular. (Dkt. 39 ¶ 43.) Similarly, her allegation of "the Jail's alleged failure to allow [her] to use feminine hygiene products, such as hair relaxers and specific shaving tools due to the products' non-availability at the jail commissary," also does not clearly state a policy or custom attributable to the DuPage County Defendants that deprived Hampton of her rights. (*Id*. ¶ 59.) The Court therefore need not rule on Defendants' arguments that such actions, if properly pled as policies or customs attributable to a local governing body could not be the basis for a gender discrimination claim pursued through § 1983.

claims against unnamed John and Jane Doe Defendants.

Hampton brings claims against the individual Defendants alleging racial and gender discrimination and for retaliation. To state a claim for a violation of rights under § 1983, Hampton must allege sufficient facts for the Court to reasonably infer (1) conduct that deprived her of a right, privilege, or immunity secured by the Constitution or federal law, and (2) that the Defendant was acting under color of state law when committing the conduct alleged. *Armato v. Grounds*, 766 F.3d 713, 719–20 (7th Cir. 2014) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). Hampton must plead sufficient facts to allow the Court to reasonably infer that the Defendants "caused or participated in a constitutional deprivation." *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005).

To plead a claim for gender and race discrimination in violation of her Equal Protection rights under the Fourteenth Amendment, Hampton must plead "state action that discriminates on the basis of membership in a protected class." *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). Further, to plead a claim for sexual harassment under the Equal Protection clause, a plaintiff must plead an intent to harass "based upon that plaintiff's membership in a particular class of citizens[,]" and that the harassment was "sufficiently severe or pervasive." *Trautvetter v. Quick*, 916 F.2d 1140, 1149 (7th Cir. 1990).

The Court finds that Hampton has stated a claim for sexual harassment in violation of the Equal Protection Clause against Defendants Allen-Stuckey and Repa. Hampton, however, has failed to state a claim for racial discrimination or harassment against any of the individual Defendants. Hampton does not identify her race in the Amended Complaint, nor does she allege that any Defendant intentionally discriminated or harassed her because of her race. Finally, the Court finds that Hampton has stated a claim for retaliation against Defendant Davis.

12

### i. Defendants Allen-Stuckey and Repa

Hampton's allegations against Defendants Allen-Stuckey and Repa are similar and therefore the Court will consider the claims together. Hampton clearly alleges that Defendants Allen-Stuckey and Repa called her offensive gender-based terms which allow the Court to reasonably infer gender discrimination. (Dkt. 39 ¶ 51.) The Court finds that, at the pleading stage, Defendants Allen-Stuckey and Repa's statements were sufficiently severe to state a claim for sexual harassment. *See Hess v. Garcia*, 72 F.4th 753, 761 (7th Cir. 2023) (holding defendant's inappropriate remarks made to plaintiff were sufficient to "support an inference" that defendant intended to harass plaintiff based on the plaintiff's sex).

### ii. Defendant Armstrong

Regarding Armstrong, Hampton alleges that she submitted a grievance on February 11, 2020, alleging that he "specifically targeted" her and that she was "subjected to racist and discriminatory conduct." (Dkt. 39 ¶ 49.) This, however, is a legal conclusion not supported by facts alleged in the Complaint. Accordingly, the Court finds that Hampton has failed to state a claim for discrimination on the basis of race under the Equal Protection Clause against Defendant Armstrong.

### iii. Defendant Strumillo

Regarding Strumillo, Hampton alleges that he physically and verbally assaulted her by holding her down and placing a knee on her neck. (*Id*. ¶ 56.) During this altercation, she further alleges that "one of the deputies made a comment, 'This is another 'I can't breathe' moment and started laughing." (*Id*. ¶ 57.) Similarly, here, Hampton has not alleged that Defendant Strumrillo intentionally discriminated or harassed her on the basis of her race or gender when he allegedly assaulted her. The Court infers that the "I can't breathe" reference is to the murder of George

13

Floyd and has racially-discriminatory connotations, but Hampton does not allege that Strumillo made this comment. For this reason, Hampton has failed to state a claim for discrimination against Defendant Strumillo.

### iv. Defendant Davis

Regarding Davis, Hampton alleges that she requested to be moved to another area to avoid interacting with him and that she feared for her life. (*Id*. ¶ 53.) She further alleges that Davis threatened her while referencing her past lawsuit. (*Id*. ¶ 89.) These factual allegations, taken as true, are sufficient to state a plausible claim that Defendant Davis "caused or participated in a constitutional deprivation," as Hampton alleges. *Pepper*, 430 F.3d at 810. Hampton provides the specific dates she filed grievances regarding this conduct, which further gives Defendant Davis notice of the basis of her claims against him.

Thus, the Court denies the motion to dismiss with respect to the claims alleged against Allen-Stuckey, Repa, and Davis, and grants the motion to dismiss with respect to the claims alleged against Defendants Armstrong and Strumillo.

### v. Defendant Mendrick

Regarding Sheriff Mendrick, whom Hampton has sued in his individual capacity as well as in his official capacity, Hampton alleges that he: (1) administers the operations of the jail as the DuPage County Sheriff; (2) is an individually elected officer of DuPage County; (3) "had actual or constructive notice that [the Sheriff's Office] employees discriminat[ed] against and harass[ed] [Hampton]"; (4) "failed to take any remedial action" despite his knowledge of the employees' conduct "toward [Hampton] and other transgender inmates"; (5) "is the final policymaking authority over the DuPage County jail operations"; and (6) made no effort to "curtail or otherwise prevent" the discriminatory conduct against Hampton. (*Id*. ¶¶ 9–10, 64, 75–78, 93, 150–53.)

14

Claims under § 1983 cannot be based on vicarious liability, but rather, Hampton must allege that Sheriff Mendrick was "personally responsible for the deprivation of a constitutional right." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). A supervisor can be responsible for the constitutional violation "if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." *Id.* (quoting *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985)). Stated another way, the official "must know about the conduct and facilitate it, approve it, condone it, or *turn a blind eye*." *Id.* (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988) (emphasis added). Drawing all reasonable inferences in Hampton's favor, the Court finds that by pleading that Sheriff Mendrick had actual or constructive notice of the discrimination against her and failed to act, Hampton has plausibly alleged that Sheriff Mendrick "turned a blind eye" to the violation of Hampton's rights. *Id*. The Court therefore will not dismiss the § 1983 claims against Sheriff Mendrick in his individual capacity.

### vi.   **Defendant Feeney**

Regarding Feeney, Hampton alleges that he discarded and closed claims she alleged in her grievances, finding them "unfounded." (*Id*. ¶ 46.) Since Feeney has not been served in this case, the Court need not consider Hampton's claims against him. Since the Court grants Hampton leave to file an amended complaint, however, the Court notes that the Seventh Circuit has held that there is no right to a jail grievance system and no cause of action based on the ineffectiveness of such a system. *See Courtney v. Devore*, 595 F. App'x 618, 620–21 (7th Cir. 2014) (unpublished) (stating that "state grievance procedures do not create substantive liberty interests protected by due process" and the "mishandling" of those grievances states no claim); *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim.")." Thus, to the

15

extent her claims rely solely on Feeney's mishandling of her grievances, Hampton should consider Seventh Circuit precedent in determining whether to replead any claims against Feeney that are not time-barred.

### vii. Nurse Kuczynska

Nurse Kuczynska argues that Hampton has failed to state any claims against her by failing to make any specific factual allegations regarding Nurse Kuczynska. Indeed, the Second Amended Complaint only explicitly refers to her when stating that "Head Nurse Malgorzata G Kuczynska, sued in her individual capacity, was at all relevant times hereto employed by the Sheriff's Office," and three times elsewhere stating that she is sued in her individual capacity. (Dkt. 39 ¶¶ 28, 115, 143, 179.) Hampton pleads an instance of interacting with a "staff nurse" who gave Hampton the wrong medication and that "[w]hen confronted about the suspicion that [Hampton] was given the wrong medication, [Hampton] was disregarded and told [she] must take the medication." (*Id.* ¶ 54.) Hampton further pleads that her grievance on this matter "was replied to as founded and brought to the attention of the nurse's supervisor and staff." (*Id.* ¶ 55.) The Court finds that these factual allegations and the Second Amended Complaint generally fail to put Nurse Kuczynska on notice of Hampton's claims against her. Hampton does not plead that Nurse Kuczynska was the "staff nurse" who gave her the wrong medication. (*Id.* ¶ 54.) The Court is unable to draw such an inference given that Hampton pleads Kuczynska was the "head nurse," as opposed to a "staff nurse." (*Id.* ¶¶ 28, 54.) Hampton attempts to defend her claims against Nurse Kuczynska by arguing that since only one of her grievances "mention[s] a nurse to the best of [her] knowledge," it is essentially "safe to assume that Nurse Kuczynska's actions are specified in the only grievance that mentions a nurse." (Dkt. 69 at 10.) Hampton is incorrect. She has not pled sufficient facts for the Court or Nurse Kuczynska to infer that Nurse Kuczynska was the nurse who gave her the

16

wrong medication. Hampton's claims against Nurse Kuzcynska are therefore dismissed without prejudice.

### viii. All Remaining Individually Named Defendants

As to the remaining individually named Defendants Romanelli, Schoenenberger, Swanson, Gustafson, Shake, Richard, Ritter, Kaczmarczyk, Villegas, Shymkus, and Segoviano, Hampton fails to plead any facts regarding her interactions with them or actions these Defendants took individually to violate her rights. Much like with Nurse Kuczynska, Hampton names these Defendants in the case caption, states that they are being sued in their individual capacities and were employed by the Sheriff's Office, and lists them while stating that the "alert" assigned to her "is the reason for the continued retaliation and poor treatment of [her] by all of the[se] . . . individuals." (Dkt. 39 ¶¶ 9, 11–28, 100–15, 128–42, 164–78, 188.) The Court agrees with Defendants that Hampton fails to state a claim against these Defendants by doing little more than naming them in her caption and stating that they were employed by the Sheriff's Office. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). To defend her claims, Hampton argues that her complaint taken as whole, including the attached exhibits contains enough facts to plead her claims. (Dkt. 69 at 5.) Hampton attached 70 pages of exhibits to her Second Amended Complaint, which largely consist of her grievances and some incident reports filed by some of the individually named Defendants. (*See* Dkt. 39-1.) Hampton cannot merely attach numerous exhibits as a substitute for factual allegations against these Defendants in the complaint. She must provide the factual allegations in the body of her complaint or run afoul of Rule 8(a)'s requirement that a complaint make a "short and plain statement." *See Cable v. Kuraray America, Inc.*, No. 3:22-CV-1031-DRL-MGG, 2023 WL 4156690, at *4 (N.D. Ind. June 22, 2023) ("Of course, [Plaintiff] may

attach exhibits, but h[er] complaint must as a whole state in plain and concise terms the entirety of h[er] allegations rather than merely refer to other documents."). The Court will not sift through 70 pages of exhibits to determine if there are enough facts as to each named Defendant when Hampton herself neglected to include those facts in her 189-paragraph complaint. Based on Hampton's failure to plead *any* conduct by Romanelli, Schoenenberger, Swanson, Gustafson, Shake, Richard, Ritter, Kaczmarczyk, Eidson, Villegas, Shymkus, and Segoviano supporting an inference that they caused or contributed to the violation of Hampton's rights, the Court dismisses the claims against these Defendants without prejudice.

### ix.  John and Jane Doe Defendants

Hampton's Second Amended Complaint asserts claims against five John Does and one Jane Doe. Hampton's § 1983 claims against these Defendants, however, are subject to a two-year statute of limitations. *See Ashafa v. City of Chicago*, 146 F.3d 459, 462 (7th Cir. 1998). The Seventh Circuit has stated that "[it] do[es] not consider that the naming of a 'John Doe' defendant in the complaint tolls the statute of limitations until such time as a named defendant may be substituted." *Sassi v. Breier*, 584 F.2d 234, 235 (7th Cir. 1978); *see also Rodriguez v. McCloughen,* 49 F.4th 1120, 1121 (7th Cir. 2022) ("But a plaintiff who uses placeholders must take account of the clock: substitution must be completed before the statute of limitations expires."); *Herrera v. Cleveland,* 8 F.4th 493 (7th Cir. 2021) All actions serving as the bases for Hampton's claims occurred prior to the filing of her initial complaint on October 5, 2020. (*See generally* Dkts. 1, 39.) As of January 18, 2023, Hampton reported that she had not served the John and Jane Doe Defendants. (Dkt. 78 at 2.) Hampton has not filed any motion to amend her complaint to name these John and Jane Doe Defendants and the two-year statute of limitations elapsed long ago. Her claims as to the John and Jane Doe Defendants are dismissed with prejudice.

**Conclusion**

For the foregoing reasons, the Defendants' motion to dismiss (Dkt. 58) is granted in part and denied in part, and Defendant Nurse Kuczynska's motion (Dkt. 59) is granted. Hampton's claims against DuPage County, the DuPage County Sheriff's Office, and the following individually named Defendants are dismissed without prejudice: Armstrong, Strumillo, Romanelli, Schoenenberger, Swanson, Gustafson, Shake, Richard, Ritter, Kaczmarczyk, Eidson, Villegas, Shymkus, Segoviano, and Kuczynska. Hampton's claims against the DuPage County Jail, a non-suable entity, are dismissed with prejudice. Hampton's claims against the unnamed John and Jane Doe Defendants are also dismissed. The Court denies Defendants' motion to dismiss Hampton's claims as to Sheriff Mendrick, Allen-Stuckey, Repa, and Davis as explained herein. By April 22, 2024, Hampton may file a Third Amended Complaint.

ENTERED: 3/31/24

*Nancy L. Maldonado*
_____
Nancy L. Maldonado
United States District Court Judge